UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JESSICA A.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C19-5595-BAT

**ORDER REVERSING THE COMMISSIONER'S DECISION AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff appeals the denial of her application for Supplemental Security Income. She contends the ALJ erred by (1) misevaluating the opinion of examining psychologist Felicia Mueller, Psy.D.; (2) failing to give reasons for rejecting aspects of the opinion of non-examining psychologist Michael Brown, Ph.D.; and (3) failing to cite clear and convincing reasons for rejecting plaintiff's testimony. Dkt. 10. The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings on an open record under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 30 years old, graduated high school, and has not previously worked. In October 2015, she protectively filed for benefits alleging disability beginning in 2003 largely based on anxiety and symptoms of PTSD stepping from years of sexual abuse as a child and

domestic violence in her marriage, though she also based her application on physical impairments. After a hearing, in a May 2018 decision the ALJ determined that plaintiff had the severe impairments of asthma; other and unspecified arthropathies; disorders of the female genital organs; affective disorders; and anxiety disorders. Tr. 18. The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work limited by additional physical and mental restrictions. Tr. 20. The ALJ found, however, that plaintiff was not disabled because she retained the RFC to perform jobs that exist in significant numbers in the national economy. Tr. 27–28.

## DISCUSSION

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000). The Court finds that the ALJ's decision was not supported by substantial evidence and was the result of harmful legal error because the ALJ did not cite specific and legitimate reasons for discounting the examining opinion of Dr. Mueller and did not cite clear and convincing reasons for rejecting plaintiff's symptom testimony. Because the Court remands for further proceedings rather than for an award of benefits, the Court also directs the ALJ to reevaluate the non-examining opinion of Dr. Brown in order to clarify which aspects of the opinion, if any, were rejected in assessing RFC. The remand is on an open record and for a new hearing and decision.

### 1. Dr. Mueller's March 2015 Examining Opinion

Plaintiff contends that the ALJ failed to cite specific and legitimate reasons for rejecting Dr. Mueller's March 2015 examining opinion that plaintiff would have difficulty getting to work

or maintaining a work schedule. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Court agrees.

Dr. Mueller opined:

> [T]here would likely be difficulty getting to work and maintaining a work schedule in the face of even low levels of stress. Stress tolerance is pervasively poor, and it appears that through therapy, the claimant is just beginning to develop healthy tools and strategies for coping more effectively with anxiety and situational stressors. There is no motivation to work. There is a pervasive tendency of being easily overwhelmed by the routine demands of everyday living.

Tr. 517–18. The ALJ did not explain why he had rejected Dr. Mueller's opinion that plaintiff would have difficulty getting to work and maintaining a work schedule. Instead, the ALJ's reasons for giving Dr. Mueller's opinion only "some weight" were broad and conclusory:

> [Dr. Mueller] did not . . . have access to the most recent objective medical evidence, nor did she have the opportunity to treat the claimant over a period of time. Her opinion is well explained, and internally consistent. The totality of the evidence, however, gives a clearer picture of the claimant's mental functional capacity. Accordingly, the undersigned has adjusted the claimant's residual functional capacity to reflect the most recent objective medical evidence as well as the claimant's subjective complaints (Exs. 18F, 19F, Hearing Testimony).

Tr. 26. That is, the ALJ acknowledged that Dr. Mueller's opinion was well-explained and internally consistent but discounted it in toto as inconsistent with the most recent objective medical evidence, referring generally to 124 pages of medical notes, and with plaintiff's complaints, referring generally to the 33-page hearing transcript. *See* Tr. 616–76 (Exh. 18F); Tr. 677–740 (Exh. 19F); Tr. 36–69 (Hearing Testimony).

The Court finds that ALJ harmfully erred by failing to address Dr. Mueller's opinion that plaintiff would have difficulty getting to work and maintaining a work schedule. The Commissioner argues that the ALJ's reasoning was sufficient because "the totality of the

evidence . . . gave a clearer picture of Plaintiff's mental functional capacity," for example, that when plaintiff "actually attended therapy and took her medication as prescribed, she experienced overall improvement in her symptoms." Dkt. 11, at 15. The Court rejects the Commissioner's argument first because it is not specific to the limitations described by Dr. Mueller, and second because it is not legitimate in that the argument mischaracterizes the medical record and plaintiff's testimony.

First, the ALJ did not specifically address Dr. Mueller's opinion that plaintiff would have difficulty getting to work and maintaining a work schedule. This omission was harmful because such a limitation could conceivably affect plaintiff's ability to work full-time. Second, the Commissioner's argument and the ALJ's *sub silentio* rejection of the limitation are not legitimate because they are based on an unreasonable characterization of the medical evidence and plaintiff's testimony. Neither the ALJ nor the Commissioner in responsive briefing cited evidence that could be reasonably construed as undermining Dr. Muller's opinion that plaintiff would have difficulty getting to work and maintaining a work schedule. *See* Tr. 23–25; Dkt. 11, at 15 (citing Tr. 454, 456, 563, 597, 610, 614, 685, 688, 714, 729). The ALJ acknowledged that plaintiff missed appointments on a regular basis and had difficulty engaging in treatment, which supports, rather than provides a reason for rejecting, Dr. Mueller's opinion. Tr. 23–25; *see, e.g.*, Tr. 446, 497, 593, 601, 679, 683, 688, 713, 728, 736, 707. No medical provider suggested that plaintiff's ability to get to work and to maintain a work schedule would be improved by better medication compliance or better attendance at counseling. With mental health issues, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*

*v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Here the ALJ could conclude that "the most recent objective medical evidence as well as the claimant's subjective complaints" contradicted Dr. Mueller's "well explained, and internally consistent" opinion only by cherry-picking the record to highlight any instances in which plaintiff was doing well without regard for how the medical providers or plaintiff interpreted the encounters. Tr. 26. Such unreasonable inferences do not constitute specific or legitimate reasons for rejecting Dr. Mueller's opinion that plaintiff would have difficulty getting to work and maintaining a work schedule.

The Court finds that the ALJ did not cite substantial evidence and committed harmful legal error by rejecting Dr. Mueller's opinion that plaintiff would have difficulty getting to work and maintaining a work schedule.

### 2. Dr. Brown's March 2015 Non-Examining Opinion

Plaintiff contends that the ALJ neither adopted Dr. Brown's March 2015 non-examining opinion nor referred to specific evidence to support rejecting limitations regarding occasional supervisor instruction/redirection and interacting with a small group of co-workers in a non-public setting. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). The Court concludes that the ALJ may not have addressed these aspects of Dr. Brown's opinion, but it is not apparent that this omission was harmful. On remand the ALJ should clarify to what extent Dr. Brown's opined limitations were accepted or rejected.

The ALJ discussed Dr. Brown's non-examining opinion along with the opinions of other non-examining, state-agency medical consultants and gave his opinion "some weight." The ALJ did not wholly adopt these non-reviewing opinions because he concluded that plaintiff had *greater* limitations. Tr. 25. According to the ALJ, the added limitations better accounted for plaintiff's "subjective complaints, as well as the most recent objective medical evidence, which

shows that the claimant continued to struggle with some mental health symptoms." *Id.* Plaintiff argues that Dr. Brown found that plaintiff had two limitations that were neither accepted nor rejected by the ALJ. First, although Dr. Brown opined that plaintiff was "[a]ble to sustain SRTs for an 8 hr workday w/ normal breaks and *occasional* supervisor instruction/redirection after hands-on learning," Tr. 77 (emphasis added), the ALJ found that plaintiff could have "*frequent* contact with the supervisor that will allow for any instructions needed for the work tasks" Tr. 20 (emphasis added). Second, although Dr. Brown noted that plaintiff was "[a]ble to accept instructions from supervisors and interact but not collaborate w/ a *small group* of co[-]workers in a *non-public* setting," Tr. 78 (emphasis added), the ALJ did not find that plaintiff would be limited to a small group of co-workers or restrict her to a "non-public" setting, instead finding plaintiff could have "no more than occasional contact with the general public," Tr. 20. Plaintiff's arguments are unpersuasive.

First, it would be reasonable for the ALJ to have inferred that Dr. Brown did not intend to *restrict* plaintiff to occasional supervisor instruction/redirection; rather, Dr. Brown's statement could reasonably be construed as meaning that in order to sustain an eight-hour workday plaintiff should have *at least* occasional supervisor instruction/redirection. In fact, Dr. Brown clearly opined that plaintiff had no significant limitations in her ability to accept instructions and respond appropriately to criticism from supervisors. Tr. 78; *see also* Tr. 518 (Dr. Meuller opining, "The claimant would require ongoing close supervision around basic problem-solving."). Second, it would be reasonable for the ALJ to have inferred Dr. Brown's statement that plaintiff could "interact but not collaborate w/ a small group of co[-]workers in a non-public setting," Tr. 78, was considered in the RFC assessment that "[t]here should not be collaborative work tasks with coworkers," that plaintiff should not only have "no more than occasional contact

with the public," *and* that "[t]here should be an emphasis on occupations/duties dealing with things/objects rather than people," Tr. 20. That is, it would be reasonable to presume that Dr. Brown's reference to interacting but not collaborating with a "small group" of co-workers in a "non-public" setting was adequately addressed by restricting her generally to no collaborative activities with co-workers and minimizing any interaction with the general public and people as a whole. Nothing in Dr. Brown's non-examining opinion suggests that plaintiff should be limited to working only with a small group while locked in a vault.

Nonetheless, because the case is being remanded for further administrative proceedings, the Court need not affirm outright what appears to be the ALJ's reasonable evaluation of Dr. Brown's opinion. On remand, the ALJ should explicitly address the purported discrepancies between Dr. Brown's opinion and the assessed RFC.

### 3. Plaintiff's Testimony

Plaintiff argues that the ALJ failed to state specific, clear and convincing reasons for rejecting plaintiff's testimony about her mental limitations.[1] *See Garrison*, 759 F.3d at 1014–15. The Court agrees.

The ALJ discounted plaintiff's testimony about her mental-health symptoms in broad terms:

---

[1] Although in her opening brief plaintiff referred to challenging the ALJ's treatment of her "testimony concerning her symptoms," the brief addressed with specificity only the ALJ's treatment of her mental limitations. Dkt. 10, at 11–13. After defendant referred to plaintiff's testimony about physical limitations, in reply plaintiff again referred specifically only to the ALJ's treatment of testimony about her mental limitations. *See* Dkt. 11, at 5–7; Dkt. 12, at 7–8. The Court finds that plaintiff has in the current proceedings waived her challenge to the ALJ's evaluation of her testimony about physical limitations. *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (*citing Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue)).

> The record reflects that the claimant has struggled with affective and anxiety disorders. Her symptoms, however, have improved with therapy and medication. The record shows that claimant has missed numerous therapy appointments, and has stopped taking her medication without the advice of her physician. When the claimant is compliant with treatment, her mental impairments appear to be relatively controlled.

Tr. 27. The ALJ then proceeded to evaluate the medical evidence—but none of the cited evidence adequately or specifically supported the ALJ's conclusions that plaintiff's symptoms have improved with therapy and medication. *See* Tr. 23–27. For example, the ALJ noted that in May 2015 plaintiff reported having stopped taking citalopram when she was out of state and had not been taking her medication for two months. Tr. 24. The ALJ failed, however, to note that at the May 2015 appointment, plaintiff's primary care physician observed that (a) plaintiff did not feel that citalopram (aka Celexa) was helpful; (b) plaintiff had not had a significant response to citalopram within the past year; and (c) as an alternative to citalopram, the physician switched her medication to Effexor XR. Tr. 563, 564. Similarly, although the ALJ referred to plaintiff's missed appointments, he did not address how those missed appointments might be a symptom of her mental limitations and did not discuss how plaintiff's testimony and attendance record might corroborate Dr. Mueller's opinion that plaintiff would have difficulty getting to work and maintaining a work schedule. Moreover, there is no indication that plaintiff was malingering or that any health care provider opined that plaintiff's symptoms would be relatively controlled were she to show better attendance at therapy or better medication compliance.

"The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p; *see Brown-Hunter v. Colvin*, 806 F.3d 487,

494 (9th Cir. 2015); *Treichler v. Commissioner*, 775 F.2d 1090, 1102–03 (9th Cir. 2014). The ALJ harmfully erred by failing to identify which testimony he found not credible and by failing to link that testimony to the parts of the record supporting non-debilitating mental-health symptoms. *See Brown-Hunter*, 806 F.3d at 494.

The Court finds that the ALJ did not cite substantial evidence and committed harmful legal error by discounting plaintiff's testimony about her mental limitations. On remand, the ALJ should reevaluate plaintiff's testimony about her mental limitations and indicate which parts of the record support the conclusions reached.

### 4. Remand for Further Proceedings

Plaintiff asks that this case be remanded for calculation of benefits. Dkt. 10, at 12–14. The Court remands for further administrative proceedings because it is not clear that the ALJ would be required to find plaintiff disabled even if Dr. Mueller's opinion and plaintiff's corroborating testimony were credited as true. *See Garrison*, 759 F.3d at 1020. Although Dr. Mueller found that plaintiff would have difficulty getting to work and keeping a work schedule, she did not indicate that these limitations would necessarily preclude full-time work. Dr. Mueller noted that plaintiff can track her appointments and deadlines, would require ongoing close supervision, and, once new tasks are mastered, would likely be able to keep up with routine tasks. Tr. 517–18. Dr. Mueller also observed: "Basic scripted telemarketing jobs or scripted customer service by phone, which allowed the claimant to work from home or in a low-stress call center environment might be an option." Tr. 518.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings on an open record under sentence four of 42 U.S.C. § 405(g)

On remand, the ALJ should reevaluate (1) Dr. Mueller's March 2015 examining opinion, particularly with respect to plaintiff's difficulty getting to work and maintaining a work schedule; (2) Dr. Brown's March 2015 non-examining opinion, clarifying which limitations, if any, were rejected; and (3) plaintiff's testimony about her mental impairments. The ALJ should allow plaintiff to supplement the record, conduct a new hearing, reassess RFC, proceed with the sequential analysis, and issue a new decision.

DATED this 26th day of February, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge